Filed 9/30/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAMS-SONOMA SONG-BEVERLY ACT CASES. | A154692<br><br>(City & County of San Francisco<br> JCCP No. 4611) |

The Song-Beverly Credit Card Act of 1971 (Civ. Code, § 1747 et seq. (the Act)) makes it unlawful for merchants to request or require customers to provide "personal identification information" as a condition to accepting a credit card for payment.  In *Harrold v. Levi Strauss & Co.* (2015) 236 Cal.App.4th 1259 (*Harrold*), we held the Act does not prohibit merchants from requesting such information unless the request is made under circumstances that would lead a reasonable person to believe the information is required to complete the transaction.

The trial court decertified a class of plaintiffs who alleged that retailer Williams-Sonoma, Inc. (Williams-Sonoma) violated the Act by requesting their zip codes or email addresses during credit card sales because it found any violation would depend on the circumstances of the specific transaction.  The court correctly applied the legal standard stated in *Harrold* and its ruling is supported by substantial evidence.  We affirm.

**BACKGROUND**

The following evidence is described most favorably to respondent in accord with the standard for substantial evidence review.  (See *SFPP v. Burlington N. & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 461-462; see also *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022 (*Brinker*).)  *Williams*-Sonoma is the parent

1

corporation to Williams-Sonoma Stores, Inc. and operates the stores Williams-Sonoma, Pottery Barn, Pottery Barn Kids, and West Elm.

In 1991 Williams-Sonoma began requesting zip codes during point-of-sale transactions in California. In 2004 it began requesting email addresses. From 2007 to February 2011, Williams-Sonoma had general procedures in place for requesting zip codes and e-mail addresses. Zip codes and emails were collected from customers regardless of the form of tender used for payment. After the purchases were scanned and totaled, the point of sale system prompted the sales clerk to ask for the customer's zip code. If the customer provided one, it was entered into the system. If the customer declined, the sales clerk bypassed the prompt by entering a series of nines or other numbers or selecting a "receipt only" option. The sales clerk then asked the customer for the form of payment.

Notwithstanding these general procedures, Williams-Sonoma's actual practices for soliciting and recording customers' personal identification information varied between individual transactions. Employees had discretion not to solicit a customer's zip code or email at all. They would sometimes decline to request it when, for example, the store was particularly busy, or the customer appeared to be in a hurry or a bad mood. If asked, employees would explain the information was not required and that it was only being collected for marketing purposes, and sometimes they would tell their customers as much without being asked. Williams-Sonoma neither rewards its employees for collecting personal identification information nor disciplines them if they do not.

Williams-Sonoma required each of its California stores to post signs at the cash registers stating that zip codes and email addresses were requested solely for marketing purposes and were not required. The signs were "no more than a foot, foot and a half" from customers, "very easy to read," and treated as "very important reference material" "not to be obstructed." In addition, 3" x 5" stickers to the same effect were displayed on the back (the customer-facing side) of each register.

In 2013, after legal proceedings not relevant here, plaintiffs Amanda Georgino, Jessica Pineda and others filed this putative class action. Their complaint alleges

2

Williams-Sonoma violated the Act between 2007 and 2011 by requesting and recording zip codes and/or email addresses from customers who used credit cards for in-store purchases.

In 2014 plaintiffs moved to certify a class of all persons from whom Williams-Sonoma had requested and recorded such information in conjunction with a credit card purchase. They argued the Act prohibits all requests for personal identifying information during credit card sales, and therefore that it is violated whether or not the customer learns from signage or a sales assistant that the information is not required. Thus, under plaintiffs' theory, liability under the Act does not depend on the circumstances of any particular transaction. In opposition to class certification, Williams-Sonoma argued that the Act is violated only if the request for personal identification information is made under circumstances that reasonably suggest the information is required for the transaction.

Relying on plaintiffs' theory for purposes of the motion (see *Hall v. RiteAid Corp.* (2014) 226 Cal.App.4th 278, 294), the court certified the class. It noted, however, that decertification could be appropriate if "either through a motion or other means such as a bifurcated bench trial, the court determines that defendants are correct on what it takes to prove a violation of the Song-Beverly Act."

And so, it went. Following briefing and argument on the question, the court essentially accepted Williams-Sonoma's interpretation of the Act. "[F]or the Song-Beverly Act, liability depends on requesting or requiring PII [personal identification information] *as a condition to accepting credit card payment.*" The standard "must focus on whether a reasonable consumer would perceive a request for PII to be a condition of paying by credit card," so the inquiry requires review of the circumstances of the actual request. In short, the court rejected plaintiffs' theory of liability and confirmed that "the circumstances of the request matter."

Based on that ruling, Williams-Sonoma moved to decertify the class. It argued its liability would depend on transaction-specific facts to determine whether any given customer provided personal identification information under circumstances that would

3

lead a reasonable person to believe it was necessary to complete the transaction. The court granted the motion. It ruled: "The objective conditions of the transactions, specifically whether a reasonable person (or consumer) would have understood that a zip code request was needed to complete the transaction, included the statements of salespeople and visible signage. Thus, the variations in those conditions . . . together with the absence of a trial plan to manage the individual issues, shows that the class action is not manageable and that such common issues as do exist do not predominate."

The court also concluded plaintiffs had not presented a trial plan to manage the individual liability issues, as they had confirmed they had "no intention of addressing circumstances" such as whether customers saw the signs or stickers or were verbally told that personal identification information was voluntary and not a condition of the sale. The court rejected plaintiffs' proposal to verify the individual class members' right to recover through a posttrial claims process because, while claim forms may appropriately be employed to establish individual damages once liability is established, "it doesn't follow that *liability* can be established by a claim form, which after all is hearsay and not subject to cross examination." Moreover, plaintiffs' proposed form failed to address "the conditions of the transaction" necessary to establish liability for any specific claim.

Plaintiffs filed this timely appeal from the decertification order.

## DISCUSSION

### I.     The Court Applied the Correct Standard of Liability

Plaintiffs contend the court erred when it decertified the class on the basis of what they call a " 'voluntary' " defense to liability under the Act. Relying principally on language in *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524 (*Pineda*) and *Florez v. Linens 'N Things, Inc.* (2003) 108 Cal.App.4th 447 (*Florez*), plaintiffs assert the Act prohibits any request for personal identification information from customers during a credit card sale, regardless of whether a reasonable customer would believe the information was required to complete the transaction. In plaintiffs' view, any other interpretation would allow retailers to defeat the Act by claiming their customers voluntarily furnished personal identification information.

4

Williams-Sonoma responds that plaintiffs misstate the trial court's ruling. The court did not, as plaintiffs suggest, invent a standard of liability dependent upon whether the customer provides the information voluntarily. Rather, it found that although a retailer "may solicit a customer's zip code during a credit card transaction if that information is provided voluntarily," it "*may not request or require the provision of a zip code as a condition of accepting a credit card payment.*" (Italics added.) Agreeing with both parties' position that liability requires the application of an objective, "reasonable consumer" standard, the court reasoned that it does not matter whether a customer subjectively believed the information was required, but, rather, what a reasonable customer would believe under the circumstances of the particular transaction. Thus, the key issue on the motion to decertify the class was whether plaintiffs could prove *on a class-wide basis* that requests for zip codes and email addresses were made "in a manner such that a reasonable consumer might perceive the request to be a condition of paying by credit card." We agree. By any fair reading of the court's rulings, the court did not decertify the class on the basis of a "voluntariness" defense but did so because liability under the Act depends on the objective circumstances of any given transaction.

We also agree with Williams-Sonoma that the court correctly applied the controlling law. On this point, the views we expressed in *Harrold*, *supra*, 236 Cal.App.4th 1259 are dispositive. There, affirming denial of a motion for class certification, we reviewed the Act's language and legislative history to conclude that "while the statute is intended to protect consumer privacy and to prohibit merchants from obtaining personal identification information under the mistaken impression the information is required to process a credit card transaction, the Act is not intended to forbid merchants from obtaining such information voluntarily, if the customer understands that the information need not be disclosed in order to use a credit card." (*Id.* at p. 1266.) "Neither the legislative history nor the cases that have interpreted the statute indicate that the Act prohibits merchants from requesting personal identification information if the request is not made under circumstances suggesting that a credit card will not be accepted as payment without such information." (*Ibid.*) Thus,

5

the Act is violated by a request for personal identification information only if the request "is made under circumstances in which the customer could reasonably understand that [the information] was required to process the credit card transaction." (*Id*. at p. 1268.) Applying the act as so construed, we concluded the Act does not prohibit collection of personal identification information after a credit card transaction is complete. (*Id*. at pp. 1262, 1268.)

Plaintiffs argue our construction of the Act in *Harrold* is antithetical to Civil Code section 1747.04, which specifies that "[a]ny waiver of the provisions of this title is contrary to public policy, and is void and unenforceable." But this puts the cart before the horse. As noted in *Gormley v. Nike Inc.* (N.D.Cal. Jan. 28, 2013, No. C 11–893) 2013 WL 322538, p. 7, fn.7 (*Gormley*), whether the requirements of a statute can be waived is a distinct question from what conduct violates the statute. Applying that observation here, the statute is violated when the request for information is made under circumstances in which the customer could reasonably believe it was required. If the circumstances are not as such, there is no violation and, therefore, nothing to waive.

Plaintiffs also contend that *Florez*, *supra*, 108 Cal.App.4th at p. 453, compels their view that the Act prohibits *any* request for personal identification information made during a credit card sale. It does not. The defendant in *Florez* argued the Act is categorically inapplicable to requests for personal identification information made *before* the customer indicates he or she will pay by credit card. (*Id.* at pp. 450, 453, 454.) The *Florez* court rejected the defendant's interpretation of the Act. In reaching that conclusion, it explained, "[w]hat . . . matter[s] is whether a consumer would perceive the store's 'request' for information as a 'condition' of the use of a credit card," and that the Act therefore "dovetails with policy by prohibiting the solicitation of information obtained under the false pretense that the transaction cannot or will not be completed without it." (*Id*. at pp. 451, 452.) The *Florez* court did not address the assertion now before us, that a request for personal identification information during a credit card sale violates the Act without regard to whether the customer would reasonably perceive the information was required. *That* is the question we considered, and rejected, in *Harrold*.

6

Plaintiffs also rely on the Supreme Court's statement in *Pineda*, *supra*, 51 Cal.4th 524, that " '[t]he obvious purpose of the 1991 amendment was to prevent retailers from "requesting" personal identification information and then matching it with the consumer's credit card number.' [Citation.] '[T]he 1991 amendment prevents a retailer from making an end-run around the law by claiming the customer furnished personal identification data "voluntarily." ' [Citation.] That the Legislature so expanded the scope of former section 1747.8 is further evidence it intended a broad consumer protection statute." (*Id.* at p. 535, quoting *Florez*, *supra*, 108 Cal.App.4th at p. 453.) But *Pineda* decided only whether a zip code is covered personal identification information under the Act. (*Id.* at pp. 528-536.) The Court did not address whether the statute prohibits any and all requests for zip codes or other personal identification information made in conjunction with a credit card payment, or whether it matters that under the circumstances a reasonable consumer would (or would not) believe the information is required for the sale. A decision, of course, is not authority for a proposition that was not considered in the court's opinion. (*Moore v. Superior Court* (2004) 117 Cal.App.4th 401, 409.)

Numerous federal cases are in accord with our conclusion in *Harrold* and here. (See, e.g., *Gossoo v. Microsoft* Corp. (C.D.Cal. Oct. 9, 2013, No. CV 13–2043) 2013 WL 5651271, p. 1 ["the test . . . 'is whether a consumer would *perceive* the store's "request" for information as a "condition" of the use of a credit card' "]; *Dean v. Dick's Sporting Goods, Inc.* (C.D.Cal. July 26, 2013, No. CV 12–7313) 2013 WL 3878946, pp. 4-5; *Yeoman v. Ikea U.S. West, Inc.* (S.D.Cal. Feb. 27, 2013, No. 11CV701) 2013 WL 12069024, p. 13; *Gormley*, *supra*, 2013 WL 322538, p. 7; *Gass v. Best Buy Co., Inc.* (C.D. Cal. 2012) 279 F.R.D. 561, 570; *Rothman v. General Nutrition Corp.* (C.D.Cal. Nov. 17, 2011, No. CV 11–03617) 2011 WL 6940490, p. 6; see also *Absher v. AutoZone, Inc.* (2008) 164 Cal.App.4th 332, 343-344].) We also observe that the Supreme Court denied review of *Harrold* (*Harrold*, *supra*, 236 Cal.App.4th 1259, review denied Aug. 26, 2015, S227266.) and on the same day, in light of *Harrold,* denied a request by the Ninth Circuit to decide a question of state law. (*Davis v. Devanlay Retail Group, Inc.*

7

785 F.3d 359, request denied Aug. 26, 2015.)  This does not mean, as Williams-Sonoma would have it, that *Harrold* is necessarily the final word on the issue, or that the question of statutory interpretation we addressed there is not close.  Indeed, the Supreme Court or the Legislature could see fit to revisit it.  But neither the facts of this case nor plaintiffs' legal arguments give us reason to question our analysis and conclusion there.

Consistent with the foregoing authorities, the trial court correctly ruled the Act is violated only if the retailer requests personal identification information under circumstances in which a reasonable customer would understand the information was required to complete the credit card transaction.

**II.     Substantial Evidence Supports the Decertification Order**

Plaintiffs argue that even if the court applied the correct legal standard, there was "no evidence, much less substantial evidence" to support its determination that predominant and unmanageable factual issues make a class proceeding untenable.  Here, too, we disagree.

A.  Legal Standards

"Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court. . . .'  The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members.  [Citations.]  The 'community of interest' requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."  (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*).)  "A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' "  (*Ibid.*)

8

"The 'proper legal criterion' for deciding whether to certify or decertify a class is simply whether the class meets the requirements for class certification. [Citation.] As a general matter, this pertains to the fundamental question whether 'the class action proceeding is superior to alternate means for a fair and efficient adjudication of the litigation." ' [Citation.] More particularly, whether common questions of law and fact predominate constitutes a proper criterion for certifying or decertifying a class." (*Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1451.) " 'If each member of the class will be required to litigate numerous and substantial issues affecting his [or her] individual right to recover damages after the common questions have been determined, the requirement of community of interest is not satisfied.' " (*Grogan-Beall v. Ferdinand Roten Galleries, Inc.* (1982) 133 Cal.App.3d 969, 976.)

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1022.)

Predominance is a factual question, so we review the trial court's finding on whether common issues predominate for substantial evidence. (*Brinker*, *supra*, at p. 1022.) We presume in favor of its order the existence of every fact the trial court could reasonably deduce from the record (*Sav-On*, *supra*, 34 Cal.4th at pp. 328-329) and "[w]here a certification order turns on inferences to be drawn from the facts, ' "the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1287, superseded by statute on another point in *Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 154.)

## B. Analysis

Here, the trial court found class certification was inappropriate because whether a reasonable person would believe their zip code or email address was required for a credit card purchase would depend on conditions of individual transactions such as the presence and visibility of posted signs or verbal advisements by sales clerks. "Thus the variation in those conditions . . . together with the absence of a trial plan to manage the individual issues, shows that the class action is not manageable and that such common issues as do exist do not predominate."

Substantial evidence supports that finding. Williams-Sonoma presented testimony and photographs establishing that it required its California stores to prominently post signs and stickers in plain view at the cash register area advising customers they were not required to provide their zip codes or email addresses. It also presented evidence that the appearance and placement of those notices are consistent with statutory and regulatory requirements for various consumer notices. This includes Civil Code section 1723, subdivision (a), enacted during the same legislative session as the Act, which requires return policies to be "conspicuously display[ed] . . . on signs posted at each cash register and sales counter," and other statutes and regulations requiring notice of, *inter alia,* health and safety hazards. Employees were trained to point customers to these notices, and a number confirmed that they did so. Plaintiffs assert there was no direct evidence that customers actually saw, read, or understood those notices, but the trial court correctly concluded Williams-Sonoma's evidence supports an inference that a reasonable customer would have done so.

In addition, Williams-Sonoma presented evidence that its employees had discretion about whether to request a customer's zip code; that they did not always do so; and that they faced no discipline if they did not. Employees were trained to tell inquiring customers that the information was for marketing purposes and was not required, and they sometimes spontaneously explained this to customers.

In short, Williams-Sonoma presented substantial evidence that the conditions relevant to a reasonable customer's understanding of whether personal identification

10

information was required for a credit card sale varied between individual transactions. In this factual context, plaintiffs' reliance on *Nicodemus v. Saint Francis Memorial Hospital* (2016) 3 Cal.App.5th 1200 (*Nicodemus*) does not help them. The issue in *Nicodemus* was whether the defendant hospital's uniform responses to attorney requests for medical records violated statutory requirements governing the production of medical records demanded by patients through their attorneys prior to litigation. (See Evid. Code, § 1158.) The court held the fact that each class member might ultimately be required to show that his or her records request was submitted before or in contemplation of litigation did not overwhelm the common question regarding the hospital's undisputedly uniform practices for responding to such requests. (*Nicodemus*, *supra*, 3 Cal.App.5th at p. 1219.) The facts of this case are very different. The objective circumstances of each transaction will have to be proven to determine whether the customer would have reasonably perceived he or she had to provide a zip code or email address in order to pay by credit card. In this situation, the trial court's determination that the predominance of those individual issues rendered a class proceeding untenable was supported by substantial evidence and within its discretion.[1]

## DISPOSITION

The order is affirmed.

---

[1] Plaintiffs' November 27, 2018 request for judicial notice of the statement of decision in two trial court matters and certain legislative history material is granted. In light of our determinations that the court correctly applied *Harrold* and that substantial evidence supports its order, we do not reach plaintiffs' further claim that the court erred in rejecting their trial plan. As plaintiffs acknowledge, the court's criticism of the plan was premised on its finding that individual issues predominate regarding the signs and dialogue between customers and store employees.

_____
                                                      Siggins, P. J.

WE CONCUR:


_____
Petrou, J.


_____
Wick, J.[*]

---

[*] Judge of the Superior Court of Sonoma County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12

Trial Court: San Francisco City & County Superior Court

Trial Judge: Honorable Curtis E.A. Karnow

Counsel:

Stonebarger Law, Gene J. Stonebarger, Richard D. Lambert; Patterson Law Group, James R. Patterson, Allison H. Goddard for Plaintiffs and Appellants.

Sheppar, Mullin, Richter & Hampton, P. Craig Cardon, Benjamin O. Aigboboh, Elizabeth S. Barcohana for Defendants and Respondents.