Filed 12/4/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DIANA NIEVES NOEL, as Personal Representative, etc., Plaintiff and Appellant, v. THRIFTY PAYLESS, INC., Defendant and Respondent. | A143026 (Marin County Super. Ct. No. CIV1304712) |

Plaintiff James A. Noel bought an inflatable swimming pool at defendants' drugstore that turned out to be much smaller than the pool pictured on the box. He sued defendant Thrifty Payless, Inc. on behalf of himself and similarly situated individuals, alleging defendants violated the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) (CLRA), Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (UCL), and False Advertising Law (Bus. & Prof. Code, § 17500) (FAL) by selling the pool with deceptive advertising to consumers in its California retail stores. When Noel moved to certify the class, the trial court denied his motion on the UCL and FAL causes of action, finding Noel's proposed class—consisting of more than 20,000 potential members—was not ascertainable under Code of Civil Procedure section 382. The court also refused to certify a class on Noel's CLRA cause of action because it determined common questions of law or fact did not predominate over individual questions of reliance and causation. On appeal, Noel claims the court erred by applying incorrect legal standards and abused its discretion by refusing to grant him a continuance so he could more fully develop the facts to support his motion.

1

We conclude the court did not abuse its discretion or misapply the law in denying class certification. Rather, the underlying problem with the class certification motion appears to be attributable to class counsel's premature filing of the motion without first conducting sufficient discovery to meet its burden of demonstrating there are means of identifying members of the putative class so that they might be notified of the pendency of the litigation. This failing jeopardizes the due process rights of absent class members, and rather than relieve the class representative of the obligation to make such a showing—as Noel's counsel seems to suggest—we affirm the trial court's denial of the class certification motion.

## I.    BACKGROUND

### A.    Factual Background

On July 4, 2013, Noel purchased an inflatable Kids Stuff Ready Set Pool (Ready Set Pool) from a Rite Aid[1] store in San Rafael, California, with his bank debit card for $59.99. Noel did not retain the receipt of his purchase, but his bank record lists the Rite Aid purchase. Noel based his decision to purchase the Ready Set Pool on a photograph on the pool's packaging, located on all sides of the box, which depicted a group of three adults and two children sitting and playing in the pool. Noel assumed the pool would be large enough to comfortably fit a group of equivalent size. The box also prominently displayed the pool's dimensions: "8FT X 25IN." Noel does not contend the dimensions were inaccurate.

Once Noel inflated and filled his pool, he noticed his pool was "materially smaller" than the Ready Set Pool shown on the packaging. Rather than fitting two adults and three children as pictured on the box, Noel's pool was capable of fitting only one adult and four small children. The photographs in the record and the briefs show a marked difference in size between the pool as set up by Noel and the photo on the box.

---

[1] Thrifty Payless, Inc. does business as Rite Aid. We refer to the defendant as Rite Aid, as the parties have done.

2

## B.     Procedural Background

On November 18, 2013, Noel filed this class action seeking restitution for all consumers who purchased a Ready Set Pool from a Rite Aid store located in California during the four years prior to that date. Following Rite Aid's unsuccessful demurrer to the complaint, Noel moved for class certification on May 12, 2014, apparently after having taken limited discovery,[2] with a hearing date of June 13, 2014. The motion was filed by Noel's then counsel, Randolph Gaw of The Gaw Group in San Francisco. Gaw had been recommended to Noel by his son-in-law, Mark Poe, also an attorney. Poe and Gaw evidently had been classmates in law school. While Noel's action was pending, Poe went into law practice with Gaw, which prompted Rite Aid to question the adequacy of class counsel, since Poe had been present when Noel discovered the size differential in the pool and had been named in Noel's discovery responses as a potential percipient witness at trial. (See *Apple Computer, Inc. v. Superior Court* (2005) 126 Cal.App.4th 1253, 1264–1279.) The parties' counsel stipulated to continue the hearing on the class certification motion until August 22, 2014, giving both parties the opportunity to brief the issue of counsel's adequacy.

On August 15, 2014, Christopher Wimmer of the Emergent Legal firm in San Francisco substituted in as Noel's counsel of record and also serves as his counsel on

---

[2] On March 25, 2014, Noel responded to Rite Aid's first set of special interrogatories, prefacing his response to each interrogatory with the following objection: "PLAINTIFF objects to this contention interrogatory as premature, as discovery has only begun in this action." Despite this acknowledgment, less than seven weeks later, Gaw filed his class certification motion. We also note that the first set of special interrogatories that Gaw propounded to Rite Aid, which were answered on February 18, 2014, asked no questions regarding the location or nature of any records maintained by Rite Aid relating to identifying purchasers of the Ready Set Pool, asking instead about the number of pools sold, the revenue derived from those sales, the number of pools returned, and the identities of people involved in the manufacture of the pool and the development and approval for use of the Ready Set Pool box. A second set of interrogatories propounded to Rite Aid was answered on May 1, 2014; again the interrogatories included no questions relating to Rite Aid's maintenance of records regarding the purchasers of the pools or how their identities might be ascertained.

3

appeal. Wimmer attended the August 22 hearing on the motion for class certification. Despite his recent entry into the case, Wimmer did not request a continuance of the hearing, nor did he seek to withdraw the motion or to supplement the evidentiary showing. The hearing went forward as scheduled on August 22, 2014, with Wimmer representing Noel and the putative class.

In opposing the motion for class certification, Rite Aid submitted to the court a photograph of the pool properly inflated and filled, and it appeared much closer to the size of the pool depicted on the box. The photo submitted by Rite Aid showed three adults and two children in the pool. Even in that photo, however, Noel testified the pool appeared smaller than the pool pictured on the box. Rite Aid's pool photo was accompanied by the declaration of an expert in photogrammetric analysis and photo interpretation, concluding Noel had not set up the pool properly.[3] Despite this evidence, Noel's deposition testimony reflected his belief that he did set up the pool properly, and the trial court accepted that testimony as true.

Judge Paul M. Haakenson denied Noel's motion on the UCL and FAL causes of action, finding Noel did not satisfy the class ascertainability requirement for certification under Code of Civil Procedure section 382.[4] The court found Noel had presented "no evidence" to establish "what method or methods will be utilized to identify the class members, what records are available, (either from Defendant, the manufacturer, or other entities such as banks or credit institutions), how those records would be obtained, what those records will show, and how burdensome their production would be. . . ." The court also found "a class action is not superior to numerous individual actions" and "will be no more efficient than individual actions in light of the individual issues [*sic*] that must be presented on the issue of reliance and damages."

---

[3] The Ready Set Pool came with very specific instructions for handling, including that it was necessary for two adults to set up the pool; it must be installed on ground having no greater than a three-degree slope, with no rocks, mounds, or other irregularities; and the top ring must not be inflated beyond 85 percent capacity.

[4] The CLRA does not mention the class must be ascertainable. (*Thompson v. Automobile Club of Southern California* (2013) 217 Cal.App.4th 719, 728 (*Thompson*).)

4

Judge Haakenson also denied the class certification motion on the CLRA cause of action. Due to the stricter proof requirements under the CLRA, the court found Noel had not shown the commonality of issues required for the CLRA. It reasoned "the CLRA requires that all class members must show actual injury in order to recover damages, restitution and/or injunctive relief, unless the advertisement is materially misleading. (Civ. Code[,] § 1780(a); *Steroid Hormone Product Cases* [(2010)] 181 Cal.App.4th [145,] 155.)" The court concluded "unless the court finds the packaging materially misleading as a matter of law, in order to recover under a CLRA claim every class member must prove he/she purchased the pool in reliance on the deceptive advertising." The court did not find the packaging materially misleading and therefore found reliance and causation were not predominantly common issues.

Noel timely appealed, alleging error in denying the class certification motion on all three causes of action.[5]

## II.    DISCUSSION

### A.    The Legal Landscape

The CLRA protects consumers against deceptive business practices in the sale of goods and prohibits a seller from representing that goods have characteristics they do not possess. (Civ. Code, § 1770, subds. (a)(4)–(a)(5) & (a)(7); see *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1374.) The UCL prohibits acts of unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice. . . ." (Bus. & Prof. Code, § 17200.) The FAL is equally comprehensive within the smaller and narrower field of false advertising. (*Id.*, § 17500; see *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320.)

Two class action statutes are at issue here. The first, more widely operative statute is Code of Civil Procedure section 382, which governs class actions generally, including actions under the UCL and FAL. Under that statute, a certification motion may be

---

[5] James Noel passed away on January 31, 2016, while the appeal was pending. His widow, Diana Nieves Noel, substituted in as appellant. When we refer to "Noel," we mean James Noel and use the masculine pronoun.

granted where there is "an ascertainable class and a well-defined community of interest among class members." (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On*).) The courts determine the existence of an ascertainable class using three factors: (1) class definition, (2) class size, and (3) means of identifying class members. (*Sotelo v. Medianews Group, Inc.* (2012) 207 Cal.App.4th 639, 648 (*Sotelo*).) The community of interest inquiry also depends on three criteria: (1) whether common issues predominate over individual issues; (2) whether the plaintiff's claims are typical of the class he or she seeks to represent; and (3) whether the plaintiff is an adequate class representative. (*Id.* at p. 651; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (*Linder*).)

The CLRA contains its own provision for class actions, similar in many respects to the requirements just cited, under which a court must certify a class when: "(1) It is impracticable to bring all members of the class before the court. [¶] (2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members. [¶] (3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class. [and] [¶] (4) The representative plaintiffs will fairly and adequately protect the interests of the class." (Civ. Code, § 1781, subd. (b).)

## B. Standard of Review

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." ' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022 (*Brinker*).) "But because group action also has the potential to create injustice, trial courts are required to ' "carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' " (*Linder, supra,* 23 Cal.4th at p. 435.)

6

A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. (*Id.* at pp. 435–436.)

In addition, we must examine the trial court's stated reasons for denying class certification. (*Linder*, *supra*, 23 Cal.4th at p. 436.) " 'Ordinarily, appellate review is not concerned with the trial court's reasoning but only with whether the result was correct or incorrect. [Citation.] But on appeal from the denial of class certification, we review the reasons given by the trial court for denial of class certification, and ignore any unexpressed grounds that might support denial.' " (*Thompson*, *supra*, 217 Cal.App.4th at p. 726.) On the other hand, we may not reverse simply because some of the court's reasoning was faulty, so long as any of the stated reasons are sufficient to justify the order. (*Ibid.*, citing *Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 843–844; see also *Sav-On*, *supra*, 34 Cal.4th at pp. 326–327.)

### C. The Trial Court Did Not Apply the Wrong Legal Standard in Finding There Was No Ascertainable Class for Noel's UCL and FAL Claims.

Bringing forth evidence to show the proposed class was ascertainable was Noel's burden. (*Sav-On*, *supra*, 34 Cal.4th at p. 326 ["[t]he party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members"].) The trial court decided Noel failed to carry that burden. It did not abuse its discretion or misapply the law.

Noel insists the class was ascertainable because the class definition was clear and simple: "All persons who purchased the Ready Set Pool at a Rite Aid store located in California within the four years preceding the date of the filing of this action [*i.e.*, November 18, 2013]." He cites cases such as *Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, 858, which advises: "In attempting to define an ascertainable class, the goal is to use terminology that will convey 'sufficient meaning to enable persons hearing it to determine whether they are members of the class plaintiffs wish to represent.' "

7

Noel's emphasis on precision of drafting is not incorrect, but it is somewhat beside the point. Precision of definition chiefly comes into play if the defendant claims the class definition is overbroad or otherwise flawed. Here Rite Aid's opposition to class certification did not turn on the class definition, but rather the lack of records through which to identify class members. Noel failed to articulate and support with evidence any *means of identifying* potential class members, as required by case law. (*Sotelo*, *supra*, 207 Cal.App.4th at p. 648.) As noted above, "[i]n determining whether a class is ascertainable, the trial court examines the class definition, the size of the class and the means of identifying class members." (*Ibid*.)

Instead of arguing he met the three-factor *Sotelo* standard by pointing to a realistic method by which class members might be identified, Noel takes issue with *Sotelo* itself.[6] He takes the position he was not required to make such a showing, and the trial court committed legal error by placing that burden on him.

Noel claims the correct standard of ascertainability is that set forth in *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 14 (*Estrada*): "*The class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself as having a right to recover based on the description*." (Italics added.) Relying on his attorneys' draftsmanship and Rite Aid's identification of the precise number of pools sold, Noel contends he has identified an ascertainable class. But we do not agree with the myopic analysis upon which that argument rests. As *Sotelo* pointed out, "The theoretical

---

[6] Though the *Sotelo* test is criticized by Noel, who treats it as an outlier, *Sotelo* is not unique in employing the three-factor test of ascertainability. In fact, the three-factor test did not originate with *Sotelo*, but rather has been used when appropriate for many years. (See, e.g., *Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1274 (*Reyes*); *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1207.) In our own division, we have cited with approval the same three-factor test in the recent past. (*Nicodemus v. Saint Francis Memorial Hospital* (2016) 3 Cal.App.5th 1200, 1212 (*Nicodemus*).)

8

ability to self-identify as a member of the class is useless if one never receives notice of the action." (*Sotelo*, *supra*, 207 Cal.App.4th at p. 649.)

In *Estrada*, delivery truck drivers for FedEx Ground Package System, Inc. (FedEx), who owned their own trucks, sued FedEx for reimbursement of certain job-related expenses. With regard to certification, the main dispute on appeal did not involve the adequacy of the class definition, which (through various iterations in the trial court) was precise, limiting, and allowed for self-identification. The real dispute was whether, because of the legal requirements of the underlying causes of action, the claims against FedEx would require proof by individual members of the class, or whether instead "common questions of law or fact [would] predominate. . . ." (*Estrada*, *supra*, 154 Cal.App.4th at p. 14.)

"The trial court defined the certified class to include present and former drivers who personally perform or performed pickup and delivery services for FedEx on a full-time basis in a single work area or route (SWA's). Drivers who operate or operated in multiple work areas or routes (MWA's), corporate entities, and others were excluded from the class." (*Estrada*, *supra*, 154 Cal.App.4th at p. 4, fn. 1.) That narrow definition left 209 drivers within the class, so that a limited number of individuals needed to be identified. The court found the class ascertainable, and rightly so. Presumably FedEx would know the identities of its drivers and former drivers and its records would so reveal. (*Id*. at p. 14.) The issue here is different and pertains to ascertainability.

Rite Aid relies on *Sotelo*, *supra*, 207 Cal.App.4th 639, which we regard as a more demanding standard than that described in *Estrada*, as well as a more pragmatic approach in determining ascertainability, and one which comports with the rationale underlying the ascertainability requirement. "The ascertainability requirement is a due process safeguard, ensuring that notice can be provided 'to putative class members as to whom the judgment in the action will be res judicata.' [Citation.] 'Class members are "ascertainable" where they may be readily identified without unreasonable expense or time by reference to official records. [Citation.]' [Citation.] *In determining whether a*

9

*class is ascertainable, the trial court examines the class definition, the size of the class and the means of identifying class members.*" (*Sotelo,* at pp. 647–648, italics added.)

In *Sotelo*, the plaintiffs sought to certify a class of people who worked " 'for or on behalf of' " various newspaper companies " 'in folding, inserting advertising materials into, bagging, bundling, loading, and/or delivering said newspaper to its residential subscribers . . . and whom no defendant has acknowledged to be its employee in the performance of such work.' " (*Sotelo*, *supra*, 207 Cal.App.4th at p. 645.) Defendants had records identifying some 5,000 people who had signed a contract with a newspaper, but because putative class members hired others to assist with the work, the actual size of the proposed class and the identities of some class members were unknown. (*Id.* at p. 646.)

The trial court in *Sotelo* denied certification, and Division Two of this District affirmed because the " 'lack of objective evidence (such as business records) that indicate class membership' " led to " 'an actual obstacle to identifying persons' " who fell within the defined class. (*Sotelo*, *supra*, 207 Cal.App.4th at pp. 648–649.) *Sotelo* found the "lack of records identifying carriers and their helpers" reason enough to affirm the trial court's order because the plaintiffs had not devised a means of notifying unknown class members of the pendency of the action. (*Id.* at pp. 639, 649–650.) The plaintiffs in *Sotelo* argued that members of the class could be identified by reference to distributors' records of which individuals had performed the jobs described in the class definition, but the Court of Appeal dismissed that argument because there was no evidence the newspaper distributors maintained such records. (*Id.* at p. 649.) The plaintiffs in *Sotelo* also argued the class was ascertainable because class members could be contacted and self-identified by "posting notices in respondents' facilities." (*Ibid.*) Again, Division Two rejected this suggestion, apparently regarding it as too haphazard a means of notice. (*Ibid.*)

The issue in this case is similar. Noel submitted no evidence the class members could readily be identified—or identified at all—from Rite Aid's records. He pointed to Rite Aid's interrogatory responses relating the number of pools sold (20,752), the number

10

of pools returned (2,479), and Rite Aid's gross revenue from sale of the pools ($949,279.34), but submitted nothing offering a glimmer of insight into who purchased the pools or how one might find that out. He neither described nor produced Rite Aid's records from which these numbers were derived, nor did he indicate how much other information those records might reveal. Unless Noel could propose some realistic way of associating names and contact information with the 20,000-plus transactions identified by interrogatory response, there remained a serious due process question in certifying a class action.

While Noel was not required to actually identify the 20,000-plus individuals who bought pools, his failure to come up with any *means* of identifying them was a legitimate basis for denying class certification. The 2,479 people who returned their pools presumably would be excluded from class recovery, but the court had no evidence concerning whether or how that subset could be identified. Addressing the issue of notice in his moving papers below, Noel hypothesized that class members could be notified through Rite Aid's rewards program or email lists (numbers of entries not revealed), without explaining, much less proving, how any cross-referencing between the class members' transactions and the names on those lists might be achieved to allow for personal notice. He might have assumed notice would be by broadcast email or publication in advertising flyers, which would be both overinclusive and underinclusive, but it is not clear the trial court shared that assumption. Noel acknowledges on appeal that individual class members must eventually be identified, but he does so only to the extent that class members would have to prove their identities to share in the judgment. That does not address the due process notice issue at all. And the means of notice he proposed would not have resulted in the "vast majority" of those notified being, in fact, class members. (Cf. *Medrazo v. Honda of North Hollywood* (2008) 166 Cal.App.4th 89, 101.)

Though Noel would have us treat *Sotelo* as a misguided aberration from the true self-identification test under *Estrada*, he misreads those cases. The tests employed in *Sotelo* and *Estrada* are not incompatible. Indeed, the two tests are often cited side-by-

11

side in the same opinion. (See, e.g., *Hefczyc v. Rady Children's Hospital-San Diego* (Nov. 17, 2017, D071264) ___ Cal.App.5th ___ [2017 D.A.R. 10982, 10987, 2017 Cal.App. Lexis 1016, *25]; *Nicodemus*, *supra*, 3 Cal.App.5th at pp. 1212, 1217; *Aguirre v. Amscan Holdings, Inc.* (2015) 234 Cal.App.4th 1290, 1299–1300 & fn. 6 (*Aguirre*); *Sotelo*, *supra*, 207 Cal.App.4th at p. 648.) Rather, we see *Sotelo*'s three-factor test as a refinement of the ascertainability prong of the *Estrada* test when that prong of the test requires a closer look.

To the extent Noel acknowledges the test employed by *Sotelo* has any validity, he suggests it should be restricted to employment class actions and held inapplicable to consumer class actions. Rite Aid, for its part, suggests cases employing the *Estrada* test involved either a pre-existing contractual relationship between the defendant and members of the class or cases of shoddy recordkeeping in which the defendant was under a legal obligation to keep records. We think it inappropriate to pigeonhole either test for use only in a specific category of subject matters. Instead, the utility of one test or the other should turn on how the parties have framed the issues in an individual case based on their pleadings, briefs, and evidence in the class certification proceedings. When the defendant claims the class definition is overinclusive or ambiguously worded, the *Estrada* test may provide the best analytical framework. When the defendant's opposition to certification is based on inability to ascertain the identity of class members due to a lack of records, the three-part test used in *Sotelo* may better serve. The trial court did not abuse its discretion or act contrary to law when it denied class certification based on Noel's failure to show a means of identifying class members, as authorized by *Sotelo*.[7]

We note *Sotelo* was criticized by *Aguirre*, *supra*, 234 Cal.App.4th 1290, decided by the Third Appellate District near the time briefing in this case was coming to a close, and not cited by either party. At our request, however, the parties did address the impact

---

[7] The court did not cite *Sotelo* or any other case in support of its reasoning. That is irrelevant, however, because its reasoning was supported by *Sotelo* and similar cases.

of *Aguirre* at oral argument. *Aguirre* held a class plaintiff need not identify individual class members or specify a means to personally notify such members before attaining class certification. (*Id.* at p. 1301.) Plaintiff there brought a class action against Party America, alleging the company had violated Civil Code section 1747.08 by requesting and recording California customers' ZIP Codes in conjunction with credit card transactions over a three-year period. (*Id.* at pp. 1293, 1296.) The trial court denied class certification because the class plaintiff had been unable to specify a means to "clearly identify, locate and notify class members through a reasonable expenditure of time and money" where the class size was expected to be about one million. (*Id.* at pp. 1293, 1298–1302.) The Court of Appeal reversed, holding the third criterion under *Sotelo*— establishing a "means of identifying" class members at class certification—did not require a class plaintiff to prove there is a way to give absent class members personal notice.[8] (*Id.* at p. 1301.)

The thrust of *Aguirre* was that the "means of identifying" class members under the three-part test used in *Sotelo* required only that there be a means for class members to identify themselves when it became necessary to prove class membership or damages to partake in the judgment, just as Noel argues here. (*Aguirre*, *supra*, 234 Cal.App.4th at pp. 1299–1306.) *Aguirre* itself recited the same three-factor test used in *Sotelo*, except it added to the third factor that the court need only consider " 'the means available for identifying class members' *at the remedial stage*." (*Id.* at p. 1300, italics added.) It thus grafted onto an old rule a new limitation, reasoning that any consideration of identifying class members for notice purposes at the class certification stage would sound the death knell of consumer class actions. (*Id.* at p. 1301, quoting *Astiana v. Kashi Co.* (S.D.Cal. 2013) 291 F.R.D. 493, 500 ["If class actions could be defeated because membership was difficult to ascertain at the class certification stage, 'there would be no such thing as a

---

[8] A panel of this Division cited these aspects of *Aguirre* with approval in *Nicodemus*, *supra*, 3 Cal.App.5th at page 1212, but decided the case by rejecting a claim of overinclusiveness. (*Id.* at pp. 1213–1217.) *Nicodemus*'s citation to *Aguirre* was dictum.

13

consumer class action.' "].)  The Third District concluded the trial court had applied an "erroneous legal standard" and "improper criteria" by requiring the class plaintiffs to "clearly identify, locate and notify class members through a reasonable expenditure of time and money" at the class certification stage.  (*Id*. at pp. 1293, 1298–1301, 1306.)

*Aguirre* reasoned that requiring a class plaintiff to identify "a means for providing personal notice of the action to individual class members" would "conflict with" the notice by publication provisions applicable to class actions.  (*Aguirre*, *supra*, 234 Cal.App.4th at p. 1301.)  *Aguirre* cited "the liberal notice provisions contained in California Rules of Court, rule 3.766(f)," in support of its rejection of *Sotelo*'s requirement that the plaintiffs prove a means of identifying potential class members for personal notice.  *Aguirre* emphasized that rule 3.766(f), in addition to allowing notice by publication when personal notice is " 'unreasonably expensive' " or the individual losses are " 'insubstantial,' " also allows for notice by publication or similar means " 'if it appears that all members of the class cannot be notified personally. . . .' "  (234 Cal.App.4th at p. 1301, italics omitted.)  We agree the rule anticipates that some class actions must dispense with personal notice, but the wording of the rule clearly implies that personal notice is the preferable method.[9]

The opinion in *Aguirre* seems to assume that personal notice could be, even should be, disregarded completely at the class certification stage.  The putative class in *Aguirre* numbered about a million.  (*Aguirre*, *supra*, 234 Cal. App. 4th at pp. 1295, 1302, fn. 7.)  With a class that large, perhaps assuming personal notice cannot be given was realistic, but with a class size of 20,000 we are not so quick to make that assumption.  In fact, it seems to us that in the context of a proposed class of this size or even larger—as in

---

[9] Rule 3.766(f) provides:  "**Court may order means of notice** If personal notification is unreasonably expensive or the stake of individual class members is insubstantial, or if it appears that all members of the class cannot be notified personally, the court may order a means of notice reasonably calculated to apprise the class members of the pendency of the action—for example, publication in a newspaper or magazine; broadcasting on television, radio, or the Internet; or posting or distribution through a trade or professional association, union, or public interest group."

14

*Aguirre*—the due process concerns implicated by the ascertainability prong of the class certification test are heightened, and as a result, the issue of whether there are feasible means for giving proposed class members notice deserves even greater scrutiny than it does for smaller putative classes. (See, e.g., *Estrada*, *supra*, 154 Cal.App.4th at p. 14.) With fewer putative class members, the likelihood of their receiving notice, by whatever means is chosen, often may be more readily apparent. Thus, as we see the issue, before a trial court certifies a class, the court should be allowed to inquire into the expected manner of notice, including whether class members can be identified for personal notice. The court may insist upon personal notice, depending on the circumstances. We draw no bright lines, and leave much to the discretion of the trial court, but we prefer this more pragmatic and flexible approach to a blanket rule prohibiting trial courts from considering notice issues altogether at class certification proceedings.

Indeed, California Rules of Court, rule 3.766(c)(3), provides that the trial court must, "[u]pon certification of a class, or as soon thereafter as practicable," issue an order regarding class notice, including "[t]he time and manner of notice[.]" To suggest, as *Aguirre* did, that the trial court must blind itself to the manner of notice until after the conclusion of the certification proceeding appears to run counter to this provision of the rule and to bind unduly the trial court's hands in determining notice issues.

*Aguirre* held a "representative plaintiff need not identify, much less locate, individual class members to establish the existence of an ascertainable class." (*Aguirre, supra,* 234 Cal.App.4th at p. 1301.) "Nor must the representative plaintiff establish a means for providing personal notice of the action to individual class members," the court explained. (*Ibid.*) This language is more absolute than we find comfortable. We do not endorse the view that individual members of the class must be *identified by name* at the time of a class certification motion, but we do not think it violates class action doctrine or public policy to require some showing of a *means of identifying* them and a description of how notice might be given. The court may require personal notice in a specific case, depending in part on the amount of loss at stake for each individual class member and the size of the class.

15

*Aguirre* acknowledged, as have other cases, that the purpose of the ascertainability requirement is the due process concern of facilitating notice to the class. (*Aguirre*, *supra*, 234 Cal.App.4th at pp. 1300–1301.) That being so, we do not think a trial court should be precluded from inquiring into the means of giving notice at the class certification stage. Yet, the only inquiry into identity of class members allowed under *Aguirre* is to determine whether the class will be ascertainable "at the remedial stage" based on self-identification. (*Id.* at p. 1300.) To ignore the issue of identifying class members for notice purposes gives short shrift to the due process considerations in play at the certification stage, a consequence of the holding of *Aguirre* in which we do not concur.

*Aguirre* relied in large part on *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, in which the proposed class was all Yellow Cab taxi users in the four years prior to the filing of the action who were subjected to "overcharges allegedly made by defendant" by setting its cabs' meters to a rate higher than that approved by the Public Utilities Commission. (*Id.* at pp. 699–700, 706.) Plaintiff had identified two classes of taxi riders: those who paid with Yellow Cab script and those who paid in cash. (*Id.* at pp. 700, 713–714.) With respect to the script class, plaintiff alleged "the names and addresses of all purchasers and users of script books can be definitely ascertained from [Yellow Cab's] books and records. . . ." (*Id.* at p. 700.) Thus, the plaintiff had, at least with respect to script users, alleged in the complaint the means of identifying class members. Of course, identifying the cash users of cabs would be much more problematic, and the Supreme Court did not address this fact, leading *Aguirre* to conclude that identification of class members was not required. (*Aguirre*, *supra*, 234 Cal.App.4th at p. 1301.) But *Daar* was decided on demurrer, when the plaintiff's allegations must be accepted as true (67 Cal.2d at p. 713), and when plaintiff had obtained no discovery and so could not be expected to identify class members or designate a means of notice.[10]

---

[10] *Aguirre* also relied on *Reyes*, *supra*, 196 Cal.App.3d at page 1274, quoting, "it is firmly established a plaintiff is not required at this stage of the proceedings to establish the existence and identity of class members." (*Aguirre*, *supra*, 234 Cal.App.4th at p. 1301.) *Reyes* reversed the trial court's denial of a class certification motion where the

16

Noel, even after having had an opportunity to conduct discovery, presented no evidence of a practical or even viable means of identifying the individuals associated with the more than 20,000 transactions disclosed by Rite Aid's sales records for purposes of giving them notice. He has not attempted to prove or even explain how Rite Aid's records might be mined for evidence of customer identity or cross-referenced with other available evidence to obtain the identities of the purchasers of the Ready Set Pool or any means of contacting them. Nor has he established that personal notice cannot be given. On this record, the trial court made no finding that the proposed class was unascertainable on any conceivable set of facts; rather, what the court concluded was that the class cannot be ascertained on the evidentiary showing Noel made, which lacked any level of assurance that there is an available means to notify putative class members of the pendency of the action—at the beginning of the proceeding, rather than at the end when all is said and done. We cannot say the court's call denying certification in these circumstances was an abuse of discretion.

Our holding on this point, we realize, may be contrary to that of *Aguirre*. But in view of the deference owed the trial court and the anemic showing by Noel, we see the issue somewhat differently than our Third District colleagues saw it on the record presented there. We hasten to add that we do not view the modest evidentiary burden that was imposed in this case as something so onerous that it must portend the end of " ' "such thing as a consumer class action." ' " (*Aguirre*, *supra*, 234 Cal.App.4th at pp. 1301.) We view it instead as something that, with proper foresight in the early stages of a class proceeding, can be addressed quite easily, especially if it is given the same level of care and attention as, for example, drafting a precise description of the class. What occurred here provides an object lesson in the risks of brushing the issue aside in connection with class certification and leaving it to be addressed at the conclusion of the proceedings.

reason for the denial was the claimed excessive expense and effort involved in identifying class members, not a lack of records that would allow them to be identified. (*Reyes*, at pp. 1274–1276.)

17

**D.** **The Trial Court Did Not Apply the Wrong Legal Standard Under the CLRA in Determining That Class Claims Do Not Predominate Over Individual Claims.**

The CLRA cause of action based on false advertising required proof of reliance and harm as to each class member (*Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 221–222 (*Tucker*)), whereas the UCL and FAL required such proof from class representatives but not absent class members (*Sevidal v. Target Corp.* (2010) 189 Cal.App.4th 905, 923–924). The CLRA's more demanding proof requirement accounted for the trial court's finding that class issues did not predominate over individual issues on the CLRA cause of action.

A consumer may satisfy his or her burden of showing causation under the CLRA by showing materiality of the illegal act. (*In re Vioxx Class Cases* (2009) 180 Cal.App.4th 116, 129 (*Vioxx*).) A representation is considered material if it "induced the consumer to alter his position to his detriment." (*Ibid*.) When the consumer shows the complained-of misrepresentation would have been material to any reasonable person, he or she has carried the burden of showing actual reliance and causation of injury for each member of the class. As some courts have put it, the plaintiff may establish " 'causation as to each by showing materiality as to all.' " (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1292.)

Conversely, if the issue of reliance or causation is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is not properly certified as a class action. (*Tucker*, *supra*, 208 Cal.App.4th at p. 222; *Davis-Miller v. Automobile Club of Southern California* (2011) 201 Cal.App.4th 106, 122–123; *Vioxx*, *supra*, 180 Cal.App.4th at p. 129; *Caro v. Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 668.) Thus, in arriving at its conclusions about commonality and predominance, the trial court was required to predict whether the issues of reliance and causation would end up being common issues that could be litigated on a classwide basis or individual issues that would splinter any class action into multiple mini-trials.

18

Judge Haakenson determined Noel's CLRA cause of action did not predominantly involve common issues. As we read the court's order, it concluded both reliance and causation were individual issues not amenable to class litigation.

The trial court reasoned that some members of the class may not have relied on the photograph in purchasing their pools, and might instead have relied on the advertised 8' x 25" size of the pool, also prominently displayed on the box. Because "to obtain relief under the CLRA, both the named plaintiff and unnamed class members must have suffered some damage caused by a practice deemed unlawful under" that act (*Steroid Hormone Product Cases*, *supra*, 181 Cal.App.4th at pp. 145, 156), the trial court concluded it would need to find materiality of the photograph "as a matter of law" before it would be required to certify the class under the CLRA. Noel challenges this statement as legally incorrect.

We might not characterize the determination in just the way Judge Haakenson did, but we think his order implied a substantial number of pool purchasers, not merely a handful, may have been motivated by the dimensions of the pool rather than by the photo. The court's conclusion about what could influence pool buyers' purchasing decisions was not an unreasonable inference from the evidence. The court's entire discussion of materiality and commonality showed it did not misunderstand the decision it was called upon to make. And because materiality had not been demonstrated on a classwide basis, the court concluded causation, too, was an individual issue.

Noel contends the court required him, in effect, to prove the merits of his CLRA claim, which he insists was not required at the certification stage. We agree the merits are not to be resolved at class certification (*Brinker*, *supra*, 53 Cal.4th at p. 1023), but that is not what happened here. "Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate. To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them." (*Id*. at p. 1025.) Because the merits of Noel's claims were intertwined with issues pertinent to class

19

certification, there was no error in considering Rite Aid's evidence insofar as relevant to the questions raised by the class certification motion. (*Id*. at pp. 1023–1024; *Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 990–991; *Quacchia v. DaimlerChrysler Corp.* (2004) 122 Cal.App.4th 1442, 1447–1448, 1454.) The court's ruling did not require Noel to prove the merits of his cause of action; it was a simple, evidence-based prediction that disputed issues at trial were more likely to be individual than common. The ruling neither included nor arose from a finding that Noel's claim lacked merit, and in fact the court reached the opposite conclusion, finding that Noel had raised a triable issue on the merits.

## E. The Court Did Not Abuse Its Discretion in Finding a Class Action Was Not Superior to Litigation of Individual Claims.

The trial court also found a class action would not be "superior" to individual litigation of the claims asserted by Noel. Noel was not required to show a class action was superior to individual litigation under the CLRA to have his certification motion granted, but such a showing was required for the FAL and UCL claims. (*Thompson*, *supra*, 217 Cal.App.4th at pp. 727–728.) Having rejected Noel's claims of legal error, we also reject the contention that the court abused its discretion in making this final determination. It is not clear from the court's order to which causes of action this finding pertains. If the court intended to include lack of superiority as a reason for rejecting class certification on the CLRA cause of action, that was error, but harmless due to the other valid reasons for denying class certification. If the court intended its negative superiority finding to apply only to the FAL and UCL causes of action, then it was supported by the evidence and did not amount to an abuse of discretion.

## F. The Court Did Not Abuse Its Discretion by Denying a Continuance.

As indicated above, it appears to us the class certification motion failed in large part because Noel's counsel filed the motion without first taking sufficient discovery to know what records Rite Aid kept or how the purchasers of the pools could be identified through those records, or otherwise. As a consequence, when it became apparent during the hearing that Noel might lose the motion, Noel's newly retained counsel made the

20

following comments: "[E]very certification of a class is conditional. And so if we get down the path here and we focus on the next phase here, the ascertainability issues, and if in fact the evidence shows that the class is not ascertainable, it can be decertified at that time. [¶] . . . [I]f the Court has concern that it is not able to reach the decision on ascertainability at this point, I can't speak to the discovery that was conducted by prior counsel; but I would request that given the opportunity to conduct discovery on this ascertainability issue, I am certainly happy to do that and then we can actually put the evidence before the Court if it feels like it needs anything more."

Noel characterizes Wimmer's quoted statement as a request for a continuance to conduct further discovery before ruling on the motion, though he never used the word "continuance." Rite Aid questions whether it even qualifies as such. At the hearing in the trial court, Rite Aid's counsel apparently understood Wimmer's position to be that the class certification motion should be granted, with discovery to be conducted thereafter to support the ascertainability requirement. Wimmer incorrectly characterized "the ascertainability issues" as the "next phase" of the proceedings—as if ascertainability were a separate inquiry not to be addressed at the class certification hearing. Rite Aid's counsel said: "There is a reason why there is a class certification hearing. That's because the Court has an obligation to look at the evidence presented by the plaintiff and determine whether or not the plaintiff [has] satisfied the burden of meeting the class action requirements. You don't just certify a class and then wait for the defendant to make a decertification motion. [¶] So I think basically without quite saying it, I think plaintiff's counsel is virtually admitting to you that, well, okay, we don't have [evidence on] that issue. We could do some discovery. Well, that is not how it works. We tried to get plaintiff's counsel not to bring this motion so soon. Plaintiff's counsel insisted on bringing this motion now. So here we are. The Court has got the evidence that it has before it, and what is the evidence before the Court on ascertainability. Nothing."

Even assuming Wimmer's ambiguous statement were to be understood as a request for a continuance, the trial court did not err in denying the request. A trial court

21

has broad discretion to grant or deny a continuance, and its discretion will be reversed only when an abuse of discretion is clear. (*Link v. Cater* (1998) 60 Cal.App.4th 1315, 1321.) Noel acknowledges the trial court had discretion in granting or denying a continuance to conduct further discovery on ascertainability, but he argues the court was required to exercise it liberally, citing *Safaie v. Jacuzzi Whirlpool Bath, Inc.* (2011) 192 Cal.App.4th 1160. *Safaie* did state that because a class certification motion may not be renewed, "[t]o ensure fairness to the class action plaintiff, trial courts are required to liberally grant continuances and ensure a plaintiff has the opportunity to make a complete record before the court rules on class certification." (*Id.* at p. 1171.) But we see nothing in the record showing that Noel was not given such an opportunity. That his attorneys decided not to avail themselves of the opportunity must be regarded as a tactical decision on their part and not judicial error.

Noel's counsel was in control of the litigation; no one forced him to file a premature class certification motion. "Plaintiffs lacking adequate evidence on class issues may reasonably defer moving to certify or seek a continuance to gather evidence, and trial courts should avoid ruling on the merits until satisfied that a plaintiff has had a fair opportunity to present the case for certification." (*Stephen v. Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806, 814.) In fact, though, neither *Safaie* nor *Stephen* actually involved a request for a continuance, and though we do not disagree with their dicta encouraging liberal granting of continuances in class actions, the request for a continuance must at least be made comprehensibly enough to allow the court to know that a continuance is being requested. And the request for a continuance must be timely made, not made in the midst of a hearing on class certification when counsel suddenly realizes he does not have the evidence to support his required showing. Liberality need not be extended to the point that the court protects the putative class plaintiffs' entitlement to an opportunity for a fair hearing at the expense of the defendant's right to orderly process in opposing class certification. (See *Howard Gunty Profit Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 580–582 [appellate court vacated open-

22

ended continuance granted by the trial court so that putative class counsel could solicit an appropriate class plaintiff].)

Although Noel retained new counsel between the filing of the motion and the hearing on it, nothing compelled Wimmer to proceed with the motion if he concluded insufficient discovery had been conducted, or he did not have time to prepare for the hearing. Wimmer could have withdrawn the pending motion and conducted further discovery before refiling it. Alternatively, he could have requested a continuance of the hearing on the class certification motion to allow him to review the discovery already taken and to supplement it if he thought it necessary to carry his burden in representing the putative class. Being new to the case, it seems highly likely the court would have allowed him time to conduct further discovery if he had made the request *before* the hearing on the previously filed motion.

Because Noel's counsel were responsible for the timing of the motion, it was not an abuse of discretion to hold them to the proof of facts necessary to certify the class. That class actions are generally favored (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 457) is not reason enough to mandate that Noel's attorneys be allowed to press forward with the hearing on the motion and then abandon it mid-hearing in favor of conducting further discovery. The required showing should have come as no surprise, as *Sotelo* and other cases employing the three-part test of ascertainability had been on the books for years. Just as we are not inclined to overturn the denial of certification, we cannot say the trial court abused its discretion by failing to grant a continuance in the midst of the hearing.

### III. DISPOSITION

The order denying class certification and denying a continuance for the taking of further discovery is affirmed. Rite Aid shall recover its costs.

_____
Streeter, J.

We concur:


_____
Ruvolo, P.J.


_____
Rivera, J.


A143026/*Noel v. Thrifty Payless, Inc.*

24

A143026/Noel v. Thrifty Payless, Inc.

Trial Court:   Marin County Superior Court

Trial Judge:   Paul M. Haakenson, J.

Counsel:      Emergent Legal, Emergent and Christopher Wimmer for Plaintiff and Appellant.

Kelly, Hockel & Klein, Klein, Hockel, Iezza & Patel, Michael D. Early and Mark P. Iezza for Defendant and Respondent.